May it please the court I'm Robert Vogel I'm representing by appointment the brought into this case afterward and appointed subsequent to the sentencing. Your honors unless the court has other issues that they want to discuss I'd like to focus on the fact-finding issues here a little bit. There there's two instances in this case of judicial fact-finding. One issue centers around the the armed career criminal statute and one of them centers around the underlying fact for the guidelines whether or not we should enhance the guidelines in this case because there was a violent felony involved while Mr. Daniel possessed the firearm that he's alleged to have possessed. So taking the first event because the court did two different sets of fact-finding here. So taking the first event the court had a big discussion a big analysis of whether or not the juvenile cases the cases that Mr. Daniel was convicted of when he was 15 years old whether or not they should be treated as one or a crime spree or whether they should be treated as multiple events. I mean occasion is the word right? Occasions right. It's really the question is whether those are were committed on different occasions. Correct. And the whether he gets a mandatory minimum turns on the outcome. Exactly. In your view? Exactly and and I think right there when the court stepped into that inquiry that's where it crossed the line into the jury province. It's kind of an unusual posture here because I mean this all happens right before a lien and so I mean what do you I'm just curious what do you think Judge Collier should have done? I mean would he then because your client had already pleaded guilty would he would Judge Collier then have to convene a jury to determine the separate occasion issue? I think that the I think that the government lost its opportunity. Okay they took a plea. They entered into a plea agreement with Mr. Daniel and that plea agreement said yep I possessed a gun. I have a they could have said this was during a violent felony because remember the possession of the violent felony in Chattanooga that occasioned his ultimate arrest and brought an indictment here in federal court was not resolved. All we had were the facts, the allegations. So there's no resolution to that case. There's no finding of fact by anybody in that case. What we have are the charging documents but I think we're switching ground here and I don't know if that's what we want to do but for the guideline purposes the judge conducted a little trial on his own. For the facts of the violent felony the judge, the government was allowed to put on two witnesses that testified about the facts of what happened in Chattanooga which are fascinating facts. A car, two people standing on a sidewalk who are being robbed. I find that entertaining and I find it also a little bit, I'm a little skeptical about those facts and then when they see the policemen they don't drive off in their car. They abandon their vehicle and run. These are the facts that are testified to as the underlying facts in this and Mr. Daniel says no I was asleep in the car. When the cop came up I ran. None of that can be tested. None of that is the province's. What does this go to? I mean this is the violent felony. This is the one for the guidelines which is, I think we kind of stepped past the ACC and stepped in the guidelines for a second. Okay. So I didn't mean to switch highways. There's no argument that a jury had to find any of that beyond a reasonable doubt. It was never found. It was only found by a preponderance of the evidence in federal court Am I missing something? Isn't that okay? I don't think so. I don't think it was okay when Apprendi was found. Forget about 10 years or 14 years later when a lien comes through. What is the determination you're talking about here? Okay. I mean and did it change a mandatory minimum or maximum? It changes the guideline range. But that doesn't trigger Apprendi. I mean judges do that. They're doing it right now as we speak. Right. Because we have one case that carves it out. I mean judges make fact-finding for purposes of shifting the guideline range all the time. It's only when you hit a mandatory minimum or statutory maximum and go beyond it, right? That Apprendi, that didn't happen with respect to the guns out the window. You're right it didn't. I'm arguing a little bit out on a limb here. I'm going out a little further because I think that it's improper. I think that Apprendi and then I think that a lien says that that's not what's supposed to happen. It says anything except the fact of a conviction is province for the jury. That's what it says. Now then the question, and let's jump back to the ACC for a second. In that one, and there's a lot of discussion in that. You've got DeCamp or DeChamp, however you're supposed to say that. You've got several other ones, Graves, Bell, Brady, that's all argued by the government in their brief. And they say, well it's a legal decision. They're relying on the wrong law. The legal decision is the elements of the offense. The judge is permitted under all those cases to say, okay, is this an offense that to this. And that is what DeCamp or DeChamp, however you're supposed to say that, says. That's what Graves gives us the model for. They show it's a decision about the elements of the crime. It is perfectly within the province of a court to go in and interpret legislation. What are the elements of the crime and does it match a crime that's described in the ACC? It's perfectly fine. But what the court did here was it went beyond that and the government gave its Exhibit 1, which has all of the facts that the court looked at. They went beyond it and they dug into it. Let me ask you this. It's not necessary, is it, to give to the jury issues of fact about which there's no dispute, even if they go to the elements of the crime. For example, if there are several offenses against several victims on separate occasions, let's say within an hour and a half or whatever would have been the case in this particular situation. And there's no dispute as to that, that there were separate occasions, different victims. If there's no dispute, that doesn't have to go to the jury to satisfy Prendi or anything else, does it? I think it does. Excuse me for a second, Your Honor. I'd like to reserve two minutes for rebuttal. I forgot to do that at the beginning of my argument. All right. Your Honor, I think it does. I think that the Supreme Court cases are very clear. And I think Dase Cox is an excellent discussion of this because it says very carefully in there. And then Elaine talks about some of this stuff too, but it says very carefully in there that, you know, and Dase Cox corrects the Ninth Circuit in this and says there's two different kinds of analysis going on here. And when you step beyond the categorical or modified categorical analysis and you are making an analysis of the facts, you are rubbing against the Sixth Amendment and you can't do it. Yeah, but do you have a case that says the undisputed facts have to go to the jury? Is there any legal authority for that? But what undisputed facts are here? I mean, he got... Well, I just gave you an example. I mean, these are important facts. There's no doubt about that. And they're disputed. The time frame is disputed. The government, first of all, their argument says, well, it happened over two days. What Judge Clay is talking about, the different victims and different actually dates. I mean, I know it was just crossing over of the offenses. Those are spelled out in the indictments. Please don't fall for that little, you know, midnight thing. I mean, this is an hour and 50 minutes. That's not what the question's about. I mean, assume a hypothetical, as Judge Clay said, different victims, different dates and times. And I mean, how is that disputed in this case? Does it amount to a spree or are they separate occasions? I mean, look at the facts. I'm sorry, Your Honor, go ahead. That sounds more like a conclusion of law. Characterizing the facts, it's not proving them. Well, I don't know. Maybe, but let's think about it for a second. What we're going to do is we're going to say we got multiple offenses over a period of time. He's 15 years old. He's being run around by an adult, being told what to do, and a series of robberies that happen in an hour and 50 minutes. That sounds like a spree to me. It might not sound like a spree to you. You know what? That's a disputed fact. Let me ask you this question. I mean, there are two ways this could be undisputed. One could be, we would say, when he pled guilty to the indictment, you bring in the stuff that's in the indictment. He's admitted to it. I'm not sure if that holds up under our precedent, but did your client contest specifically the fact that there were different victims for these underlying offenses or that they occurred at different points in time, that it wasn't just him pointing a gun at one group of people? No, I don't think that's contested in this case. I think what's contested in this case is whether or not it amounts to a spree or not. Okay. Yeah, I think that if that's what... Whether, I mean, so every, it sounds like in the district court, everybody had the same sort of sense of what this conduct was, that these young are in a car, you know, and they're going from person to person and doing this. And then it's a dispute about whether that conduct amounts to different occasions or not. Is that fair? I think so. Yeah, that sounds right. And that sounds like what is alleged. What we don't know is what was part of the plea, admissions at the plea. You know, in Tennessee, in most courts, I assume that the prosecutors will make a statement about the facts that are being admitted to. And we don't know what those were. What we have here are the charging documents. What we don't know is what was admitted to when he actually entered his plea. Now, that's easy to obtain, but the government didn't do that. They're usually recorded, and it's usually something that can be transcribed. And I think it's even spoken about in some of the case law that you can use that. But that was never used here. Instead, we're speculating on what might have said. We have a logical argument about what's involved in the necessary admissions, but we don't know what those necessary admissions are. And we don't really know what he said. We know the murder, for example, went from a murder down to facilitation. We don't know what was said about that. And those are things I think that are important to consider as well. So, is this, I think I have a minute left, and then I've reserved two. Is that correct? Are there any other questions about the armed career? Not at the moment. Okay. As far as the other one goes, the enhancing the guidelines, I'm asking the court to consider this from a somewhat different perspective. Because I do think that if you read it very closely, read Elaine, where the Supreme Court has now come out and said this again, they've used the same thing again. Any fact beyond a conviction is a problem to the jury. And all they've carved out is that conviction. And now we have a situation where a judge puts on what would have been put on in front of the jury. Two witnesses come up. I mean, Mr. Daniels could have brought some he could have taken the stand and testified about that. We could have had a whole full-blown mini-trial, which is what we're supposed to do in front of juries. And that's what happened here. But it was a preponderance of the evidence standard, and here's where he's robbed. He's robbed because of that. Instead of those facts being found beyond a reasonable doubt, they only had to be found by preponderance of the evidence. And that's where the harm is. Thank you. May it please the Court. I'm going to try and bring some clarity to the Sixth Amendment arguments at issue in this case. I think it's important to distinguish between two separate arguments that are being made. One concerns the Armed Career Criminal Act, and one concerns the Guidelines. Now I'm going to address the second one first, the Guidelines. The whole line of cases, Apprendi, Alain, all of these cases are very clear that the prohibition against judicial fact-finding only applies when you're dealing with the statutory penalty range. We know. So the Guidelines issue I think is well settled. Turning to the Armed Career Criminal Act issue, that's I think the trickier one. And I would suggest that the Court think about this not as judicial fact-finding, because there was no judicial fact-finding that occurred here. Rather, it was judicial fact recognition. And what I'm talking about is... And what is that exactly? Is that fact-finding is when you have a disputed issue that's resolved by a fact-finder. And the reason why there's an exception to this whole Apprendi line of cases for the fact of a prior conviction is because the facts that are part of that prior conviction have already been determined by a process that is consistent with the Sixth Amendment, in the sense that that prior conviction either resulted from a guilty plea, at which time the facts necessary for that conviction were established beyond a reasonable doubt, or they resulted from a trial or from a guilty plea, at which time the defendant admitted the facts that were necessary for that prior conviction. Here, in determining whether the defendant was an armed career criminal, the District Court did not engage in any actual fact-finding, but it simply looked at the defendant's prior convictions and relied on the facts that were inherent in those prior convictions themselves. And that's what I mean by fact recognition. The judge is not finding the facts, he's recognizing that those facts were previously found as part of the defendant's guilty plea. And well, I mean, how do you square finding? I mean, there are two different things here. One is to say, well, he admitted to it when he pled guilty. Another is to say, this was undisputed in the District Court in this case, not the Tennessee case 15 years ago or whatever it was. Okay? So how do you get around this Lushart case for purposes of saying the fact that he guilty plea only is an admission to the elements, not to some of the more extraneous particulars that happen to be in the indictment? Well, that's true. But I think the key case here, actually, that resolves this issue very clearly is the United States v. Brose. It's from the Supreme Court, 1989 case. And that involved a situation where a defendant who had been convicted of two different Sherman Act conspiracy violations and pleaded guilty to two conspiracy violations of the same statute. It was charged as one conspiracy though, right? I'm just... It was charged as two separate conspiracies and they pleaded guilty to two separate conspiracies. And then they later on tried to collaterally attack it and say, no, actually it was just one conspiracy and this is a double jeopardy problem. And what the Supreme Court there says is when you plead guilty, it says a guilty plea is more than just a confession which admits the accused of various acts. It's an admission that he committed the crime charged against him. And part of the admission when you plead guilty, especially when you plead guilty to multiple offenses that have been charged as separate offenses, is a concession that they are in fact separate offenses. In fact, what the court says is that... Always committed on separate occasions as that term is used in the relevant guideline. And I don't see that in the red brief. They're not always. So then, I mean, it doesn't get you there. It does in this case though. Because here, how we know that these are separate offenses is you look at his guilty plea. He pleaded guilty to six aggravated robberies. And the at the same time, he was necessarily agreeing that they were six separate offenses and that they contained... His guilty plea therefore recognized, and it was necessary to his guilty plea, that he was acknowledging the facts that made those things separate offenses. Let's say, I mean, let's say a defendant has a gun. He corners six people in a room and pointing the gun at them generally says, all right, all of you throw your wallets on the wall. He says, okay, get out of here. They leave. Separate occasion? No, that's one occasion. Actually, under Tennessee law, it would only be one offense. And he robbed them all, right? Aggravated robbery as to every one of them, couldn't he? No, it would actually, under Tennessee law, that would actually only count as one aggravated robbery. Because Tennessee law is very clear that it is the theft that is the incident, not the victim. So here, that would be one theft, six victims. So my point is that if you look at, in this particular case, looking at these particular prior convictions, by admitting that each of these aggravated robberies are separate, he pleaded guilty to seven separate thefts. And how do we know that they're separate? We look at the indictments by which he was charged. And so he necessarily admitted the facts in the indictments that are necessary to understand these as being separate offenses. But the victim identity and the time, those aren't elements of the offense, right? The location is, they're not elements of the offense of aggravated robbery. But they're necessary facts that were admitted to as part of his plea. Because otherwise, he couldn't have pleaded guilty to six separate aggravated robberies. Why, again? I'm sorry. Otherwise, it would violate double jeopardy. He had to, like what guilty to two offenses at the same time, you're necessarily admitting facts that are essential for distinguishing those for double jeopardy purposes. And that's exactly why the case law of the Supreme Court about indictments says that the indictment has to be specific enough to plead against double jeopardy, should you get later on down the road. And so our position is that by pleading guilty in Tennessee court to these six prior aggravated robberies, he was necessarily conceding the facts listed in the indictment, which made those robberies separate offenses for double jeopardy purposes. And those facts in these indictments actually did not include the time. To just clarify the record, the indictments, which are... You have a couple that are on different dates, which imply a different... There's different dates and different locations and different victims. So, I mean, I think the different locations and different victims, those are facts. We submit those are facts that the defendant necessarily admitted at the time he entered his guilty plea in Tennessee court. Because those facts were necessary to show that those offenses were in fact six separate offenses as opposed to one aggravated robbery. Different locations in the indictment. There are in some of the... I mean, there are... Some of them have the same location, some of the indictments. I don't see the indictment as opposed to some of this other stuff, talking about location at all. In the county after said, they just talk about the county. Well, part of this is, I mean, part of the complication looking at these shepherd documents is the procedure by which this happened. He was initially charged in juvenile court and the indictment from juvenile court was transferred over. Those are both included in the shepherd documents and the Tennessee courts treat that charging document in juvenile court as the indictment when it gets transferred over to the adult court. So, that's why they're in the shepherd documents. If you look, for example, at page ID... How do we know that, that the Tennessee courts treat it that way? How do I know that? That was, I mean, that was the understanding of the parties at the sentencing hearing. I mean, I could provide some briefing on that issue. Yeah, okay. Okay. But the, I mean, if you look at those charging documents, for example, page ID 898, you see a date and you see location. Page ID 901, same thing, date, location. Those two happen to involve the same location, but if you go further, you'll see page ID 907, a date, different location, different victim. All right. And so, our position is that these are facts that he necessarily admitted as part of his prior guilty plea. So, at his federal sentencing, the judge was not engaged in any fact-finding. Rather, he was simply recognizing that these facts were, in fact, inherent in his prior conviction. Now, this case is unusual because typically when we're talking about facts that are necessary part of a prior conviction, we're usually talking about it in terms of elements because our analysis is usually all about that violent felony definition or serious drug offense prong of the ACCA. And usually, we're not talking about it. I mean, this, there's very few cases where this has come up in the context of the committed on occasions different from one another prong of the part of the ACC definition. And so, this is a little bit unusual, but we suggest that the analysis is the same, that a federal court is allowed to rely on facts that are necessarily inherent in the prior conviction. And what the Supreme Court's decision in Brose tells us is that facts that are necessary to distinguish offenses to show for double jeopardy purposes are inherent in the prior conviction. When a defendant pleads guilty to multiple offenses... You're asking us to expand basically on the rationale of almondaris torus? We're, no, we're asking the court to simply rely on almondaris torus and find that... Well, we're going beyond it though. I mean, aren't we? I mean, you're... No, I think what we're... Letter of almondaris torus doesn't support this sort of necessarily intrinsic argument that you're making. But Deschamps does. I mean, that's... Deschamps is not... I don't get how that has anything to do really with this case. That's about whether we use the modified categorical or the categorical, which is just a different issue altogether than whether occasion as presented here required judicial fact-finding. It has to do with this case because of the language that the court used in describing the Sixth Amendment problems with the Ninth Circuit's approach. It said part of the problem with the Ninth Circuit approach is it's looking at facts that are not inherent in the fact of the prior conviction itself. It says, and this is from Deschamps, it says, only facts that the court can be sure the jury so found are those constituting the elements of the offense as distinct from amplifying but legally extraneous circumstances. And our position is that the facts that are necessary to show that these are distinct offenses for purposes of the double jeopardy cause are not extraneous. I mean, even by its own terms, that's not elements of the offense. Elements of the offense is one thing. Facts that get you outside of double jeopardy prohibition are another. The elements of the offense, you know, Tennessee law, they're A, B, and C. It's not and, you know, you have facts that get you outside of double jeopardy. What Bruce says is that in this unique... Isn't that correct, what I just said? That's to start with, isn't that a fair description of the law? The timing of the offense is usually not an element of the offense. Okay. That's correct. So, I mean, and Deschamps is talking about the elements of the offense. But I think we have to... I'm talking about the same thing here. But you look at, what Deschamps is talking about is it's okay to, the reason why it's okay to rely on the fact of a prior conviction is as long as you're only looking at the facts that are necessarily inherent in the prior conviction. The facts that are necessarily inherent are the elements of the offense. And Bruce tells us that in the specific case where you have a person who pleads guilty to multiple offenses, violations of the same statute on the same day, that it's also necessarily inherent in the plea of guilty, the facts that are necessary to distinguish those crimes. So that's our position is that... I understand your argument and you've been quite clear. And I would also say that, you know, alternatively, if the court doesn't want to go down this road, there is an easier way, as I think you've identified. And that is that in this case, I think the defense counsel has admitted that these facts are actually not in dispute. I mean, these were not disputed facts. It was, you know, nobody is disputing that he committed these prior aggravated burglaries at different locations and against different victims. And under this circuit's, you know, precedent in Brady and numerous cases, it says, look, if you have robberies against different victims at different locations, those count as separate offenses or committed on occasions different from one another. So I think if, I mean, if those are the facts that everybody agreed on, the court's legal conclusion that he is an armed career criminal should be affirmed. Are there any other questions about this? I know the Sixth Amendment argument is a little bit, it's a little bit unique because you normally don't see this kind of analysis on the occasions different from one another prong. But if there are any other questions or concerns, I'm certainly happy to address that. Thank you. Okay. Thank you very much. So, interesting idea about different types of factual analysis, recognition of facts as opposed to actual fact finding. And I'm not really clear on the difference, but let me just start out by one slight errata that we have here. In the government's exhibits that they provided to you, page 899, for example, shows you an indictment from the criminal court in Hamilton County of these juvenile offenses. Procedure in Tennessee, once it comes out of juvenile court, is it still goes to grand jury and they still get an indictment. So some of the indictments are here, some are not. This is an incomplete packet of all of the underlying crimes that were done. Mr. Vogel, is it your understanding that the Tennessee practice is, as Mr. McLaurin said, which is that the juvenile indictment is somehow incorporated into the, I guess, what the adult indictment is? And that's an example. Not really my understanding. I mean, because you look at it here, you've got two totally different things. You've got the original charging document, which is one of the documents in here. And then you've got the actual criminal court indictment. So they may have incorporated some of the information into it, but it's going to be different DA. It's going to be presented to a grand jury in criminal court as opposed to a grand, you know, as opposed to, I mean, I don't know that there are indictments in juvenile court. My understanding is that we just charge people in juvenile court. So I don't think there is such a thing as a juvenile court indictment in Tennessee. So anyway, I want to maybe kind of point the court back a little bit to something else that we haven't really talked about yet, but it's in the briefs. That's this guideline for U.S. Sentencing Guideline 4A1.2, where it talks about the idea, and I've got this on page 35 of my brief, that two or more prior sentences may be related to each other. Therefore, treat it as one sentence for the purpose of criminal history. If they resulted from offenses that occurred on a single occasion, were part of a single common scheme, which is what we're arguing here. They're part of a single common scheme. We have an adult directing a bunch of juveniles to go out and rob people. Happens in a very short period of time. Counsel, you might want to wrap your argument up, since I see red lights on. Oh, I already ran out of time. All right. Well, that's where I was going. Thank you very much. Thank you. Case is submitted. And Mr.